**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-4465**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

SHELLEY KAY SNYDER-WINDLE,

Defendant - Appellant.

Appeal from the United States District Court for the Northern District of West Virginia, at Martinsburg. Gina M. Groh, Chief District Judge. (3:17-cr-00094-GMG-RWT-1)

Submitted: January 31, 2019                    Decided: February 6, 2019

Before WILKINSON, NIEMEYER, and WYNN, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Aaron D. Moss, Assistant Federal Public Defender, Kristen M. Leddy, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Martinsburg, West Virginia, for Appellant. William J. Powell, United States Attorney, Michael D. Stein, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Wheeling, West Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Shelley Kay Snyder-Windle appeals her sentence after pleading guilty to one count of distribution of cocaine under 21 U.S.C. § 841(a)(1), (b)(1)(C) (2012). The district court sentenced Snyder-Windle to 12 months' imprisonment and 3 years' supervised release. On appeal, Snyder-Windle contends that the district court improperly applied a two-level enhancement for possessing a dangerous weapon under U.S. Sentencing Guidelines Manual § 2D1.1(b)(1) (2016). We affirm.

"On a challenge to a district court's application of the Guidelines, we review questions of law de novo and findings of fact for clear error." *United States v. Allen*, 909 F.3d 671, 677 (4th Cir. 2018).

For drug trafficking offenses, the Sentencing Guidelines provide for a two-level enhancement to a defendant's offense level when the defendant possessed a dangerous weapon, including a firearm. USSG § 2D1.1(b)(1). The commentary to the Guidelines states, "The enhancement for weapon possession . . . reflects the increased danger of violence when drug traffickers possess weapons. The enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." *Id.* cmt. n.11(A). We apply a burden-shifting framework to this enhancement. First, the Government must prove possession of a weapon in connection with drug activities by a preponderance of the evidence; then the defendant may avoid the enhancement by demonstrating that it is clearly improbable that the weapon was linked to the drug activities. *Bolton*, 858 F.3d at 912. The Government meets its burden by proving that the defendant possessed a weapon, and demonstrating a "temporal and

2

spatial relation linking the weapon, the drug trafficking activity, and the defendant." *Id.* (internal quotation marks omitted). The defendant may demonstrate this link is improbable "by presenting circumstantial evidence, such as the type of weapon involved and its location or accessibility." *Id.* (internal quotation marks omitted). We do not require the Government to prove precisely concurrent acts of firearm possession and drug trafficking, *id.* at 913, and we have held that "a sentencing court might reasonably infer, in the proper circumstances, that a handgun seized from the residence of a drug trafficker was possessed in connection with his drug activities," *United States v. Manigan*, 592 F.3d 621, 630 (4th Cir. 2010).

Pursuant to a search warrant arising from an arrest warrant for Snyder-Windle's boyfriend, law enforcement searched Snyder-Windle's property and discovered two handguns. In Snyder-Windle's home, officers found a 9mm handgun in a basement closet, a loaded 9mm magazine on the basement steps, an empty holster on the kitchen counter, .380 ammunition in the master bedroom, and various drug-trafficking paraphernalia throughout the house. After a K-9 unit alerted on the vehicle Snyder-Windle had been driving, officers searched the SUV and discovered a .380 handgun, a loaded magazine, and spare ammunition concealed in a hidden compartment under the center console. Snyder-Windle's drug-trafficking activity included sales from various vehicles and also from her own home.

The district court concluded that the Government had met its burden to show that the handguns were spatially and temporally connected to Snyder-Windle's drug trafficking activity. In doing so, the district court noted the firearm, ammunition, loaded

3

magazine, and holster found in Snyder-Windle's home, the drug sales Snyder-Windle conducted from her home, the various drug-trafficking paraphernalia found throughout Snyder-Windle's home, and that Snyder-Windle had been driving the vehicle in which the other handgun was found. The district court also pointed out that drug dealers commonly keep weapons in their homes to protect their drugs and themselves due to the dangers associated with drug dealing.

We find no error in the district court's application of USSG § 2D1.1(b)(1). The Government met its burden of establishing a temporal and spatial relation to Snyder-Windle's drug trafficking activities. Snyder-Windle did not demonstrate that it was clearly improbable that the handguns were related to her drug trafficking activity.

Accordingly, we affirm the district court's judgment. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid in the decisional process.

*AFFIRMED*